2-19-0328 Maxine Dicks, Independent Administrator of the Estate of Edward Dicks, C. D. P. P. Memorial Medical Center, Woodstock, University of Kentucky Hospital of Woodstock, F. L. James A. Kermance, On Behalf of President Eppley, Ms. Katherine Sass, F. L. The rule 103B test is not whether the plaintiff has done everything possible with the utmost prudence and diligence, but rather whether the plaintiff exercised reasonable diligence so that the delay in service did not deny defendant a fair opportunity to investigate the facts of the case. So that it is, from what you're alluding to, an objective test on the case law. The subjective test of the plaintiff is not relevant, correct? The subjective, according to the case law, it's the objective test of the plaintiff, correct. That controls. Well, the objective test of due diligence, not the subjective test or good faith of the plaintiff, is not part of the equation, correct? Well, I think it's somewhat incorporated within the part of the actions of the plaintiff in terms of what the plaintiff reasonably interpreted from certain factors that it was presented with. For example, in this case, the notice of filing by defendant's law firm, Swanson Barnett Bell, which indicated they were filing an appearance on behalf of Dr. Shakespeare. I think that's not only how it was subjectively perceived by the plaintiff, but also it's a factor that indicates if you look at the procedures in terms of how that is interpreted, it's interpreted as being the defendant's appearing on behalf of Dr. Shakespeare. So now more than 14 months went by from the time the defendant was named in the lawsuit before he was served, correct? Well, I don't view it that way, Your Honor. Well, that's an objective fact. The objective fact is that Dr. Shakespeare's respondent in discovery, in that the respondent's discovery statute told the statute of limitations. That period expired May 23rd of 2017. Dr. Shakespeare was converted to a defendant on May 2nd of 2017. Wait, wait, wait. It only told the period of time for six months, correct? Correct. For you to name him as or to essentially decide who the defendants are going to be added and converted. Correct. So the operative period would be from May 2nd of 2017 until the service was effectuated upon the defendant here on February 10th of 2018. But there was an attempt to serve Dr. Shakespeare as a respondent. And prior to conversion, however, Dr. Shakespeare had moved to Minnesota and the address that we have for Dr. Shakespeare was not a good address. So on April 18th, the summons issued for Dr. Shakespeare as a respondent was returned unsearched. Counsel, you didn't present any evidence or an affidavit to support your position that counsel for the plaintiff in this case or the paralegal actually relied on this erroneous filing appearance, did you? The notice of filing? Yes. Was there any evidence or affidavit that you relied on that as to the basis for not actually serving Dr. Shakespeare? We did make that argument on the lower court and essentially to the lower court judge. In terms of the affidavit, I don't believe we did but that argument was made to the lower court judge. I outlined our procedure in the office where the paralegal receives the notice of filing and since the notice of filing here included Dr. Shakespeare, the paralegal marked Dr. Shakespeare as being served. There would be no reason for us to not attempt to serve Dr. Shakespeare until February 10th of 2018 had we believed there was not proper service to the defendant and not a period on behalf of Dr. Shakespeare. When you realized that Dr. Shakespeare had not been served, what alerted plaintiff's counsel to the fact that Dr. Shakespeare had not been served? The reply brief to the 103B motion that contained that reply brief was filed December 15th of 2017. In that reply brief, the argument was made before the court that not all defendants had been served. In contra distinction to the court order of August 28th, August 28th, 2017 is a court order that indicates all defendants have been served except for Dr. Kelly who is dismissed and is not relevant. Who prepared this August 28th order that alleges that there remains one outstanding defendant to be served? There's no signature there so we're not certain who prepared it. However, what we do know is that a plaintiff's counsel was there and defendant's counsel was there and before the order can be submitted to the judge, the orders are reviewed for their accuracy. So if there was a problem with the order, it was incumbent upon defense counsel to step up and say this is not accurate. Dr. Shakespeare was not served and obviously that wasn't done. What finally caused, unless you alluded to it earlier, what finally caused plaintiff's side of the case to realize that the doctor had not been served? The reply briefs to the motion for 103B, there were 103B motions brought on behalf for the parties that were served, the hospital and Dr. Dishman. Those were filed in August of 2017. So because Dr. Shakespeare was different than those two doctors, those two parties, because Dr. Shakespeare was converted after service was effectuated on those defendants, the principal focus of the case was in defending the 103B motions against the hospital and Dr. Dishman, which those were eventually denied. And that's when we saw in the reply brief that not all parties had been served. Well, there was no evidence, was there, that's curious, that the doctor was trying to evade service or was difficult to locate or anything like that? No, and in fact, the defense counsel had been speaking with the doctor during the pendency proceeding. If you look at the transcript of oral argument at record eight, the defense counsel admits to the lower court that Dr. Sheik admittedly did have knowledge of the pendency of this action because we represented the hospital and contacted her and we would represent her once service was confirmed. Well, weren't there a couple occasions along the way, as I recall reading somewhere, the defense counsel noted on two occasions that the defendant had not been served? Didn't defense counsel himself or herself make that representation that they knew he hadn't been served? In this case? Yes. I didn't see any record of that, Judge. I didn't see anywhere in the record up to that point that a reply brief that was made. Well, you noted that somebody said they noted that multiple defendants had not yet been served. Didn't somebody say that? That was in the reply brief in December of 2017. You're saying that's when somebody realized that he hadn't been served, is that what you're saying? Correct. And that's where it's in the transcript of the proceedings below. That's where I reached out to the defense counsel to find out what they would be doing with Dr. Sheik because that was not our assumption. I think it cannot be ignored that when the amended notice of filing was filed three weeks later, there was no effort to bring to our attention that the original notice of filing, which was filed with the court, the amended notice of filing was not filed with the court. There was no effort to bring to our attention that the original notice of filing erroneously included Dr. Sheik. Okay, but it wasn't filed in court, but it was emailed to you. It was emailed to us, yes. And when did you receive that? July 19th, about three weeks later. And in the interim, it was your understanding via representation through the defense attorney that there had been contact and communications with the doctor concerning this lawsuit, correct? Yes, there was an email to us. So there should be no prejudice or no surprise to the doctor that this suit was pending. Correct, correct. And no discovery occurred. The bulk of 2017 was in converting Dr. Sheik and in responding and arguing 103B motions. Okay, so in reality, you then became aware as early as July 19th that Dr. Sheik had not been served. Is that correct? We did not become aware of that fact. I thought you received an email. We did receive an email. The email only said, in close, please find the amended notice of filing, which was not filed with the court. I understand that. But doesn't that amended notice of filing put you on notice that Dr. Sheik was not served? It was a mistake by my office to not carefully discern the amended notice of filing. And that's what you attribute, I think, in your briefs to the paralegal. Is that correct? Correct. Because that's the process by which the paralegal who was in charge of obtaining the service did not. As I said, there was nothing in that email indicating that the previous notice of filing that was filed with the court was incorrectly included Dr. Sheik. Obviously, if it did, we would have obtained service as quickly as possible. So we certainly appreciate your candor. And let me ask you this. The standard review here is abuse of discretion. As you know, it means that we reverse, we conclude that no reasonable person would have agreed with the trial court's exercise of discretion. Tell us how you conclude that the court abused its discretion. A number of ways. First, the court focused solely, as defendants do in their brief, they seized on the court's argument, on just the 14-month time period. That is only but one factor to be considered with respect to whether or not there was reasonable evidence. Also, the, excuse me if I could just. Sure. So courts have held that if a lower court has not looked at the totality of the circumstances, that's an abuse of discretion. And this court below did not look at the totality of the circumstances. It focused solely on the 14-month period. And it also gave effect to an earlier representation, an earlier statement, that an e-mail from defense counsel prior to any service saying that, you know, once the parties are served, we will appear. We what? We will appear. So, but it's clear that, and that's in Silverberg as well as Siegel where the courts have indicated that failure to consider the totality of the circumstances is an abuse of discretion. She was, excuse me, she was eventually served, correct? Correct. Do you have any other questions? If you have nothing further, thank you for your time. You'll have an opportunity to rebuttal. I have nothing further. Okay, thank you. This way. Good afternoon, Your Honors. May it please the Court, Katherine Weiler on behalf of Dr. Sheckney. Excuse me. Justice Shostak, you're doing the same thing I am. I apologize to the Court in advance. Terrible. The Circuit Court properly exercised its discretion as you were just inquiring about, Justice Hudson. The Circuit Court properly exercised its discretion in this case. Because of that proper exercise of its discretion, this Court should affirm the Circuit Court's ruling. But there are other factors to look at. There are, that's correct. The judge didn't really set out the other factors as your opponent states. One of the factors being the actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service. She knew that this case was pending, correct? That's correct, Your Honor. I mean, there are e-mails back and forth between the attorneys saying that the attorney talked to her about the case. So where is her surprise or where is the prejudice? Your Honor is correct. There is no dispute about that and there never has been. Certainly, Dr. Schecke, through her attorneys, was aware of the pendency of the lawsuit. That is only one of the factors that this Court considers. And that's in direct contrast to the discussion that's made in the briefing about the analogy, for example, to cases under 616, where you're talking about whether or not there should be relation back applied in a particular case. That's a different standard. And were that this type of case, Your Honor, that may be exactly correct. But that's not the standard under Rule 103b. It's a different analysis. And that's only one factor. Here, of the other factors or all of the factors when weighed together, those factors altogether demonstrate that the circuit court's ruling was an appropriate exercise of its discretion. So can you specifically illuminate for us or identify which factors support that conclusion? Absolutely, Your Honor. And it's actually, I can point the Court to the decision. It's in the appendix at pages A238 to roughly 241, where the circuit court did walk through all of the factors. The most important factor that the Court walked through in this particular case was the length of time to obtain service. The Court really focused on the length of time. Absolutely. The Court did. But as one reviews the order, it's not only that. The activities of the plaintiff are an important piece of this puzzle. And that's particularly true here. The two of those do go hand in hand. You have a significant period of time from the date of filing of the lawsuit, and you have only one attempt over from the time of the filing of the lawsuit until February, where there was an attempt at obtaining service on the plaintiff or, excuse me, on Dr. Schechke once. Right. And that is significant to the circuit court. The circuit court focuses on that. What are the activities of the plaintiff? That's also one of the distinguishing factors that becomes evident from the case law. Yes, Your Honor. Counsel, and the Supreme Court in the Siegel case identified the seven factors that are mentioned, and it was in the brief, in the court, that the Court should consider in deciding a 103B motion. And one of them was the special circumstances which would affect a plaintiff's efforts in this case. So why shouldn't this Court consider the erroneous appearance to be one of those special circumstances? As the circuit court appropriately determined, because of the way that error was handled, that issue becomes of much less significance because there was an attempt at correcting the record on that. I think all of the parties agree there was never an appearance filed by Dr. Schechke. There's no dispute about that. Well, there was an appearance that was sent to counsel. It was not filed with the court. It was not. There was never an appearance filed. There was a notice of filing of an appearance. Right, right. They're two different things. Okay. And in this situation, when the errant notice of filing was discovered, there was an attempt to correct that, and it was made quickly. It was made within a handful of weeks, and it was sent. Did defense counsel ever file a motion to withdraw as attorney for that doctor? No. And, Your Honor, that's why it's important to know there was never an appearance filed. There's nothing to withdraw at that point. There can't be a withdrawal as counsel when there was never an appearance filed as counsel. Because the appearance and jury demand did not include Dr. Schechke. That's exactly right. Only the notice of filing that indicated that they were going to file that, and that's correct. And it was both filed on the June 30th date. Is that correct? That's correct. Exactly. And the amended notice of filing was filed, I believe, on July 19th. Yes, on July 19th. So there was an attempt made quickly to correct any error, and there was never any misrepresentation by defense counsel to plaintiff's counsel. I think, I would like to hope, plaintiff's counsel would agree with that. There was an affirmative representation before. So this is in April of 2017, that Dr. Schechke would appear by counsel as soon as service was effectuated. There was a mistake made with the notice of filing. Again, not the appearance. With the notice of filing, that was corrected. And then during briefing on the Rule 103b motions as to the two defendants for whom service was achieved, there was never any suggestion, there was never any hiding of the fact that Dr. Schechke had never been served. And that's what plaintiff's counsel is discussing when he talks about even in the reply brief. There was a specific statement made. Not all of the defendants have been served, even at this date. And you're saying they should have put my notice right there, that something had to be done? Absolutely. And, importantly, what are the dates that we're talking about there? December of 2017. December of 2017, plaintiff's counsel acknowledges he was aware at that point, because the defendants made the representation in their briefing, that Dr. Schechke had not yet been served. There was no attempted service until February of 2018. It's two months later. It's just another demonstration of the impermissible delay in this case and why the circuit court's analysis of this question was an appropriate exercise of the circuit court's discretion. Why does a Relate Back not fit in here? The Relation Back doctrine, as the Court is well aware, and as my brain hurts just thinking about, has been something undergoing additional legal analysis since the Krupski case. It's been an evolving area of law for only, I would say, roughly the last year. I think Krupski was in approximately 2012. That's when the test that's used in Relation Back was flipped on its head, and it was changed from being an analysis dependent on the plaintiff's perspective, is there a mistake made by the plaintiff, to an evaluation of how the defendant perceived in, again, I can't overemphasize in the context of Relation Back, and I apologize to the Court, my Relation Back knowledge isn't as in-depth as it probably should be for purposes of this argument, but that's the primary distinction that was made by the U.S. Supreme Court in Krupski, and now in the subsequent analysis by Illinois courts of these, as they evaluated mistake under 616. That's not the analysis here, and that's what Siegel makes plain. The question is not what's the defendant's perspective. The question comes back to what exactly did the plaintiff do to satisfy the plaintiff's burden. That's where we get into this concept of the two-step process. You know, the first step is there has to be a prima facie showing by the defendant that the plaintiff failed to act with reasonable diligence in effectuating service. And that was made primarily here by the length of time? That's correct, yes. It's a decision made on a case-by-case basis, certainly. But here there was a demonstration that the complaint was filed in November of 2016, process was not served until February of 2018, 15 months later. At that point, the burden shifts to the plaintiff, but the plaintiff has every opportunity to show that based on the totality of the circumstances, dismissal is not warranted. And this comes back, Justice Hudson, to one of your early questions about or, I'm sorry, excuse me, your question, Justice Bridges, about whether an affidavit was submitted or what sort of supporting evidence was submitted. That's fundamental after the burden shifts to the plaintiff. Give us your evidence establishing, based on the totality of the circumstances, why dismissal is not warranted here. There's no affidavit here. There's simply the representation from Plaintiff's counsel that here's what the record says. Now, I can't overemphasize. No one is suggesting there's been a misrepresentation here. That's not what we are suggesting. There has not been a misrepresentation. That is not what I'm suggesting. But there is no explanation for the delay. There's no explanation of exactly where the confusion was, why wasn't the notice of filing or the amended notice of filing sufficient to put the plaintiff on notice about the fact that there had never actually been an appearance filed by Dr. Sheky. There's nothing in the record that really explains that confusion. And without that evidence Other than they're relying on the notice of filing. That's correct, which was corrected and with or, excuse me, amended. And without any representation about that in the record, the plaintiff simply cannot satisfy that burden, that burden that's required under Siegel. So with that, certainly the Court looks to all of the relevant factors that were laid out by the Supreme Court. But the Circuit Court did that here. And the Circuit Court, in looking at the totality of the circumstances, determined that this case should, the claims against Dr. Sheky should be dismissed because service was not effectuated in a timely manner. If there are no further questions from the panel, we ask that the Court affirm the Circuit Court's ruling as an appropriate exercise of its discretion. Thank you, ma'am. Mr. Karamans. I can be brief. The 616 standard in the cases analyzing the relation back is relevant from the context that one of the factors that those courts look at in determining whether or not the party could be related back to the filing of the original lawsuit is the 103B analysis. So it's not completely accurate to say that those cases have nothing to do with the 103B issue because they do, because that's part of the analysis. And one of the main factors outlined in Siegel is the actual knowledge on the part of the defendant of dependency of the action as a result of ineffective service. That is certainly not even in dispute here. And the reason is because the prejudice would result to defendants from the inability to investigate the facts of a particular lawsuit here. That's not even in dispute. The defendant's lawyer, as outlined in Silverberg, is a malpractice carrier that represents the hospital and the doctors. So they're certainly investigating. There's no impediment. There's no reason that they were unable to investigate this lawsuit and discovery had not even started. Mr. Kermanos, here's the struggle. As Justice Hudson and I think Justice Bridges both set out the standard of review here in abuse of discretion, how do we find that the trial court abused their discretion? That's a difficult burden, isn't it? It's a burden that courts have looked at in terms of analyzing the seven Siegel factors and whether the lower courts have properly applied those seven Siegel factors. The lower court here clearly did not. The lower court focused principally on the time frame of 14 months, which is actually even an inaccurate time frame because the time frame should not be 14 months, but it should be from the date of conversion, May 2nd of 2017, to the date that we received the erroneous notice of filing. And the other factors, the factor five, which is the actual knowledge, we discussed that, and the special circumstances here are clearly this notice of filing and the effect of that filing. But let me ask you, the time, the filing that was wrong, that was only out there one month, right? That was out there on June 30th, correct. And then July 17th or something? July 19th was the amended notice of filing. Okay. So even if you withdraw 30 or some days from there, you're still beyond the statute limitation? Well, not from the data. Beyond the statute, from the standpoint of, you know, we converted Dr. Scheck. Oh, you're looking at the conversion date. Correct. Which is, which is, which told, responded in the discovery timeframe, told the statute limitations. So the statute limitations would be May 23rd of 2017. That's the time that we had to convert Dr. Scheck to an offender. We converted Dr. Scheck on May 2nd. And I think there's a strong argument to be made here. I mean, we discussed it in our brief on plaintiffs being lulled into believing that the defense counsel represented them and Dr. Scheck was part of this case. But that lull was only for less than a month. And then you realized he was not in the case. She was not in the case. Lull would be the notice of filing, the failure to point us in the amended notice of filing that Dr. Scheck was erroneously named, the order in August  stating, two days before the filing of the reply brief, stating that they communicated with Dr. Scheck with respect to the facts of the case and talked to me about amending, about amending the complaint to more accurately reflect the 622 report set. And so I think that cannot be ignored. And I think that it's an issue that goes to the point of being lulled into believing that the email is on page C406 of the record. And defense counsel states, Jim, I have no idea why you think that Dr. Mr. Dix aspirated radiology. The chart documents that this was a witnessed event on the floor. I have talked to Dr. Scheck and could confirm this. So that's one of the points where we still believe that the defense counsel was representing Dr. Scheck in this litigation. And if they don't represent Dr. Scheck, then they violated the trail rules. Right. Right. That's a good point. Which is obviously inappropriate. So defendants never acted in a manner inconsistent with legal representation of Dr. Scheck. And that, I think, lends to the lulling argument. With respect to the time between December 15th and the reply brief, and when we sought to obtain service on Dr. Scheck the second time after she was a defendant, it's in the argument that I presented before the lower court I contacted defense counsel to find out what they were going to be doing with Dr. Scheck. Obviously, we don't necessarily read the reply brief the day it comes in. Especially around the holidays. But we did contact the defense counsel with respect to that particular issue, and they said we will not be appearing on behalf of Dr. Scheck. So we promptly then went through the skip trace again and found Dr. Scheck and were able to serve Dr. Scheck. What date was that, counsel? The date we served Dr. Scheck? No, no, no. The date counsel said that to you. You know, I don't have a specific date. I know it was after the reply brief and before we issued the summons. Okay. So, you know, I apologize for that. It was a phone conversation that I did not record. As plaintiffs' attorneys, we don't keep regular time in our talks. So I just wanted to highlight those particular issues, which I don't believe were completely accurate. Thank you, sir. Thank you. You're welcome. Thank you, both of you, for your arguments here today and your professionalism. We appreciate it. We will take the case under consideration, issue a decision in due course. Court is adjourned for the day. Thank you so much.